FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2015 MAR -3  PM 2: 29

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO. FLORIDA

KEVIN PETER WARD, individually and on
behalf of all others similarly situated,
Plaintiff

v.

LOANDEPOT.COM, LLC,
Defendant

_____/

6:15 -CV -336 OR - 18KRS

Case No. 1:15-CV-

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

KEVIN PETER WARD, individually and on behalf of all other persons similarly situated, brings this action against Defendant LOANDEPOT.COM, LLC ("Defendant"), and alleges, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

### INTRODUCTION

1.     Plaintiff brings this class action against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiff's and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded or artificial voice message.

2.     Defendant made one or more unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiff.

3.     The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff

seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers, and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

## PARTIES

4.     Plaintiff KEVIN PETER WARD is a citizen of the State of Florida and resides in Sanford, Seminole County, Florida.

5.     Defendant LOANDEPOT.COM, LLC is a limited liability company organized under the laws of the State of Delaware. Defendant maintains its principle place of business at 26642 Towne Centre Dr., Foothill Ranch, California 92610. Defendant may be served with process by serving its registered agent, C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

6.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least

2

one member of the putative class is a citizen of a state different from Defendant. Furthermore, Plaintiff Class consists of at least one hundred members.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

9.      Defendant is subject to general personal jurisdiction in this District because it has continuous and systematic contacts with this District because it maintains business offices within this District. By operating a business in the State of Florida, Defendant has purposefully invoked the protection of Florida law, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

10.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.     In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

11.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

12.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place

3

pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and all ATDS calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

13. As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

4

- Prohibits unsolicited advertising faxes.

14.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

15.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## FACTUAL BACKGROUND AS TO PLAINTIFF WARD

16.     Between February 20 and February 25 of 2015, Defendant contacted Plaintiff on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), at least 12 times without first obtaining Plaintiff's written consent. In fact, to the extent Plaintiff ever consented to Defendant's marketing calls, Plaintiff revoked his consent during his first conversation with Defendant's call center representative.

17.     Plaintiff received all calls as described above on his cellular telephone assigned a number ending in 6618.

18.     Plaintiff's caller ID read "813-438-4289," "480-305-9548," or "313-373-2560" whenever Defendant called his cellular phone.

19.     Plaintiff was able to answer several of the calls and ultimately speak with a live representative of Defendant after the call was routed.

20.     On or around Sunday, February 22, 2015, Plaintiff answered the first of many incoming calls from Defendant.

21.     When Plaintiff first answered the call, the other end of the line was silent for a moment before he was ultimately engaged by a representative of Defendant.

22.     Defendant's representative told Plaintiff he was calling on behalf of LoanDepot.com and embarked on a scripted sales pitch designed to market mortgage and re-financing products.

23.     It was apparent Defendant's representative was speaking to him from a call center because Plaintiff could hear the sound of many people talking in the background.

24.     Plaintiff was not interested in Defendant's products and requested Defendant immediately remove his number from Defendant's call list and stop calling.

25.     Despite Plaintiff's clear and reasonable request, Defendant continued to call Plaintiff.

26.     On several occasions, Plaintiff answered the call, waited to be routed to a call center representative, but nobody engaged him on the other end of the line.

27.     Each time Plaintiff was able to speak with a representative, he demanded Defendant remove his number from its call list and to stop calling him.

28.     On at least one occasion, Defendant's call representative was rude to Plaintiff and became defiant when Plaintiff asked that the calls stop.

29.     It seemed to Plaintiff that Defendant called more frequently after this exchange.

30.     On or around February, 24, 2015, and after Plaintiff had requested on multiple occasions for the calls to cease, Defendant called Plaintiff five times while he was in the hospital undergoing a serious medical procedure.

31.     Plaintiff was outraged by the incessant and intrusive calls; therefore, he decided to research the phone numbers from which he had been receiving the calls.

32. Plaintiff performed an Internet search of the numbers from which Defendant called him. The results confirmed he had been speaking to LoanDepot.com, LLC or someone calling on its behalf.

33. At the time of the calls, Plaintiff did not have a business relationship with Defendant, nor did Plaintiff request information from Defendant about its products.

34. Plaintiff was annoyed by the calls and wanted Defendant to stop calling.

35. It was obvious to Plaintiff that Defendant was engaged in a marketing campaign wherein Defendant contacts a large number of consumers using an autodialer.

36. Plaintiff believed Defendant called him using an ATDS because Plaintiff received a large number of calls in a short time span, indicating to Plaintiff based on his experience, that his cell phone number was stored in an electronic database; there was silence on the other end of the line for several seconds before a live representative engaged him, indicating a live person had not dialed Plaintiff directly; on several occasions, the call was never routed to a live representative; and, when Plaintiff did actually speak with a live person, he could hear sounds of a call center in the background.

37. On information and belief, Defendant's automated system called Plaintiff on every occasion.

38. On information and belief, and based on the circumstances of the all the calls, Defendant called Plaintiff using an ATDS.

39. Plaintiff understood the purpose of Defendant's calls was to solicit business from Plaintiff.

40. Plaintiff electronically stored Defendant's number and a record of each call on his cellular telephone.

41.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

42.     Plaintiff pays the bill associated with the cellular telephone assigned the number ending in 6618.

43.     Plaintiff is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 6618.

44.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

45.     Plaintiff did not provide Defendant prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

46.     All calls Defendant made to Plaintiff violate 47 U.S.C. § 227(b)(1).

47.     Plaintiff has reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services without consent required by the TCPA.

48.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

49.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

### A.   CLASS ALLEGATIONS

50.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a),

(b)(2), and (b)(3) on behalf of himself and the following classes defined as follows (the "Class"):

> All individuals in the United States who received a call made by or on
> behalf of Defendant to the individual's cellular telephone through the use
> of an automatic telephone dialing system, or pre-recorded voice, or any
> other device having the capacity to dial numbers without human
> intervention, from October 16, 2013 to the date the Class is certified,
> where Defendant's records fail to indicate prior express written consent
> from the recipient to make such call.

51.     The following individuals are excluded from the Class: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

have a controlling interest, and its current or former employees, officers, and directors; (3)

Plaintiff's counsel and Defendant's counsel; (4) persons who properly execute and file a timely

request for exclusion from the Class; (5) the legal representatives, successors or assigns of any

such excluded persons; and (6) persons whose claims against Defendant have been fully and

finally adjudicated and/or released.

52.     This suit seeks only damages, statutory penalties, and injunctive relief for

recovery of economic injury on behalf of the Class, and it expressly is not intended to request

any recovery for personal injury and claims related thereto.

53.     Plaintiff reserves the right to expand the Class definition to seek recovery on

behalf of additional persons as warranted as facts are learned in further investigation and

discovery.

54.     Plaintiff and members of the Class were harmed by Defendant's acts in at least

the following ways: Defendant, either directly or through agents, illegally contacted Plaintiff and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid, and invading the privacy of Plaintiff and the Class members.

**B.   NUMEROSITY**

55.    The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear individual joinder is impracticable.

56.    On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendant's records.

**C.   COMMONALITY AND PREDOMINANCE**

57.    There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

58.    Common questions for the Class include, but are not necessarily limited to the following:

    a.    Whether Defendant's conduct violated the TCPA;

    b.    Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or its agents with prior express written consent to receive such phone calls after October 16, 2013;

    c.    Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

    d.    Whether Defendant systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any

automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

e.   Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

**D.   TYPICALITY**

59.   Plaintiff's claims are typical of the claims of the other members of the Class.

60.   Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

**E.   ADEQUATE REPRESENTATION**

61.   Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

62.   Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

**F.   POLICIES GENERALLY APPLICABLE TO THE CLASS**

63.   This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

64.   Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**G.   SUPERIORITY**

65.   This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy

given that joinder of all parties is impracticable.

66.     The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

67.     Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

68.     Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

69.     By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
#### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
#### 47 U.S.C. § 227

70.     Plaintiff re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

71.     Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiff's and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiff and the Plaintiff Class Members.

72.     Defendant made the calls without prior express written consent of the Plaintiff and Plaintiff Class Members.

73.     The foregoing acts and omissions of Defendants constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

74.     As a result of Defendant's violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff and the Plaintiff Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

75.     Because Defendant had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiff and Plaintiff Class Members.

76.     Plaintiff and the Plaintiff Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## ATTORNEY'S FEES

77.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

78.     Plaintiff is entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

## JURY DEMAND

79.     Plaintiff, individually and on behalf of the Plaintiff Class, demand a jury trial on all issues triable to a jury.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the Plaintiff Class, pray for the following relief:

13

a.   An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Hughes Ellzey, LLP as lead Class Counsel.

b.   An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.   An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.   Injunctive relief prohibiting Defendants' conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.   Pre-judgment and post-judgment interest on monetary relief;

f.   An award of reasonable attorneys' fees and court costs in this action;

g.   All other and further relief as the Court deems necessary, just, and proper.

Dated: February 26, 2015

Respectfully Submitted,

Benjamin H. Crumley, Esq.
Florida Bar No. 18284
CRUMLEY & WOLFE, PA
2254 Riverside Avenue
Jacksonville, Florida 32204
Telephone (904) 374-0111
Facsimile (904) 374-0113
Email: ben@cwbfl.com

W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*(Pro Hac Vice admission will be requested)*
**ATTORNEYS FOR PLAINTIFF**
**AND THE PROPOSED CLASS**