IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KEVIN PETER WARD, and
JENNIFER NAMCHI VU individually and on
behalf of all others similarly situated,
Plaintiffs

v.                                                         Case No. 6:15-cv-00336-CEM-KRS

LOANDEPOT.COM, LLC,
Defendant
_____/

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

KEVIN PETER WARD and JENNIFER NAMCHI VU, individually and on behalf of all

other persons similarly situated, bring this action against Defendant LOANDEPOT.COM, LLC

("Defendant"), and allege, upon personal knowledge as to their own conduct, and upon

information and belief as to the conduct of others, as follows:

### INTRODUCTION

1.      Defendant operates a consumer finance corporate company that offers consumers

mortgage lending opportunities. In an effort to solicit potential customers, Defendant, or someone

on Defendant's behalf, began making telephone calls, *en masse*, to consumers across the country.

2.      Defendant conducted (and continues to conduct) wide scale telemarketing

campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers

appear on the National Do Not Call Registry—without consent, all in violation of the Telephone

Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.      By making the telephone calls at issue in this Complaint, Defendant caused

Plaintiffs and the members of a putative Class of consumers (defined below) actual harm, including

the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

4.     The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an award of statutory damages to the members of the Class under the TCPA equal to $500.00 per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

5.     Plaintiffs bring this class action against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiffs' and other class members' cellular telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

6.     Defendant made one or more unauthorized calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of soliciting business from Plaintiffs.

**PARTIES**

7.     Plaintiff KEVIN PETER WARD is a citizen of the State of Florida and resides in Sanford, Seminole County, Florida.

8.     Plaintiff JENNIFER NAMCHI VU is a citizen of the State of Texas and resides in Austin, Travis County, Texas.

9.     Defendant LOANDEPOT.COM, LLC is a limited liability company organized under

the laws of the State of Delaware.  Defendant maintains its principle place of business at 26642 Towne Centre Dr., Foothill Ranch, California 92610.  Defendant has been served with process through its registered agent, C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

10.     Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendant.  Furthermore, Plaintiffs Class consists of at least one hundred members.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

13.      Defendant is subject to general personal jurisdiction in this District because it has continuous and systematic contacts with this District because it maintains business offices within this District.  By operating a business in the State of Florida, Defendant has purposefully invoked the protection of Florida law, and the exercise of personal jurisdiction over Defendant in this

District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

15.     Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

16.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.  Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines.  The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

17.     As of October 16, 2013, unless the recipient has given <u>prior express written</u> <u>consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

18.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

19.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

## COMMON FACTUAL ALLEGATIONS

20.     Defendant operates a consumer finance company that offers consumers mortgage lending opportunities.

21.     Unfortunately for consumers, Defendant utilized (and continued to utilize) a sophisticated telephone dialing system to call individuals *en masse* promoting its services.

22.     Defendant obtained these telephone numbers (*i.e.*, leads) by purchasing marketing lists containing consumers' telephone numbers and by capturing numbers used to call or submit web inquiries to Defendant.

23.     Unfortunately, in Defendant's overzealous attempt to market its services, it placed (and continues to place) phone calls to consumers who never provided consent to call and to consumers having no relationship with Defendant. Worse yet, Defendant placed (and continues to place) repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry.  Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

24.     Defendant knowingly made (and continues to make) these telemarketing calls without the prior express written consent of the call recipients and knowingly continue to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTUAL BACKGROUND AS TO PLAINTIFF WARD

25.     Between February 20 and February 25 of 2015, Defendant contacted Plaintiff Ward on his cellular telephone number *via* ATDS, as defined by 47 U.S.C. § 227(a)(1), at least 12 times without first obtaining Plaintiff's written consent.  In fact, to the extent Plaintiff Ward ever consented to Defendant's marketing calls, Plaintiff Ward revoked his consent during his first conversation with Defendant's call center representative.

26.     Plaintiff Ward received all calls as described above on his cellular telephone assigned a number ending in 6618.

27.     Plaintiff Ward's caller ID read "813-438-4289" whenever Defendant called his cellular phone.

28.     Plaintiff Ward was able to answer several of the calls and ultimately speak with a live representative of Defendant after the call was routed.

29.     On or around Sunday, February 22, 2015, Plaintiff Ward answered the first of many incoming calls from Defendant.

30.     When Plaintiff Ward first answered the call, the other end of the line was silent for a moment before he was ultimately engaged by a representative of Defendant.

31.     Defendant's representative told Plaintiff Ward he was calling on behalf of LoanDepot.com and embarked on a scripted sales pitch designed to market mortgage and re-financing products.

32.     It was apparent Defendant's representative was speaking to Plaintiff Ward from a call center because he could hear the sound of many people talking in the background.

33.     Plaintiff Ward was not interested in Defendant's products and requested Defendant immediately remove his number from Defendant's call list and stop calling.

34.     Despite Plaintiff Ward's clear and reasonable request, Defendant continued to call Plaintiff Ward.

35.     On several occasions, Plaintiff Ward answered the call, waited to be routed to a call center representative, but nobody engaged him on the other end of the line.

36.     Each time Plaintiff Ward was able to speak with a representative, he demanded Defendant remove his number from its call list and to stop calling him.

37.     On at least one occasion, Defendant's call representative was rude to Plaintiff Ward and became defiant when Plaintiff Ward asked that the calls stop.

38.     It seemed to Plaintiff Ward that Defendant called more frequently after this exchange.

39.     On or around February, 24, 2015, and after Plaintiff Ward had requested on multiple occasions for the calls to cease, Defendant called Plaintiff Ward five times while he was in the hospital undergoing a serious medical procedure.

40.     Plaintiff Ward was outraged by the incessant and intrusive calls; therefore, he decided to research the phone numbers from which he had been receiving the calls.

41.     Plaintiffs performed an Internet search of the numbers from which Defendant called him.  The results confirmed he had been speaking to LoanDepot.com, LLC or someone calling on its behalf.

42.     At the time of the calls, Plaintiff Ward did not have a business relationship with Defendant, nor did Plaintiffs request information from Defendant about its products.

43.     Plaintiff Ward was annoyed by the calls and wanted Defendant to stop calling.

44.     It was obvious to Plaintiff Ward that Defendant was engaged in a marketing campaign wherein Defendant contacts a large number of consumers using an autodialer.

45.     Plaintiff Ward believed Defendant called him using an ATDS because Plaintiff Ward received a large number of calls in a short time span, indicating to Plaintiff Ward based on his experience, that his cell phone number was stored in an electronic database; there was silence on the other end of the line for several seconds before a live representative engaged him, indicating a live person had not dialed Plaintiff Ward directly; on several occasions, the call was never routed to a live representative; and, when Plaintiff Ward did actually speak with a live person, he could hear sounds of a call center in the background.

46.     On information and belief, Defendant's automated system called Plaintiff Ward on every occasion.

47.     On information and belief, and based on the circumstances of the all the calls, Defendant called Plaintiff Ward using an ATDS.

48.     Plaintiff Ward understood the purpose of Defendant's calls was to solicit business from him.

49.     Plaintiff Ward electronically stored Defendant's number and a record of each call on his cellular telephone.

50.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

51.     Plaintiff Ward pays the bill associated with the cellular telephone assigned the number ending in 6618.

52.     Plaintiff Ward is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 6618.

53.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

9

54.     Plaintiff Ward did not provide Defendant prior express written consent to receive calls to his cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A).

55.     All calls Defendant made to Plaintiff Ward violate 47 U.S.C. § 227(b)(1).

56.     Plaintiff Ward has reason to believe Defendant has called, and continues to call, thousands of wireless telephone customers to market its products and services without consent required by the TCPA.

57.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff Ward, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

58.     On behalf of the Plaintiffs Class, Plaintiff Ward seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF JENNIFER VU

59.     Over six years ago on or about June 11, 2008, Plaintiff Vu registered her cellular phone number ending in 6312 with the National Do Not Call Registry.

60.     On April 14, 2015, Plaintiff Vu received two calls on her cellular telephone from the phone number (281) 407-6114, and three calls from the designation "UNKNOWN."

61.     Plaintiff Vu received all calls described above on her cellular telephone assigned a number ending in 6312.

62.     Defendant and/or third parties on Defendant's behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff Vu's prior express written consent.

63.     Plaintiff Vu was not able to answer either of the calls from the number (281) 407-6114; however, the caller left a pre-recorded message on Plaintiff Vu's voicemail.  The pre-recorded message stated the caller was "Susana"  calling from Loandepot.

64.     Plaintiff Vu received a call from UNKNOWN approximately 45 minutes later, but she was unable to answer the call.

65.     Approximately two and a half hours later, Plaintiff Vu received a second call from (281) 407-6114.

66.     Plaintiff was not able to answer the call; however, Plaintiff was aware that her phone was ringing and was annoyed by the repeated calls.  Plaintiff Vu researched (281) 407-6114 and confirmed it was associated with Defendant.

67.     At approximately 4:34 p.m. on that same day, Plaintiff Vu received another call from UNKNOWN and a subsequent voicemail.  Although, the earlier pre-recorded message from Susana was the result of the first call from (281) 407-6114, this time the pre-recorded message from Susana was the result of a call from UNKNOWN.  Clearly, both were registered to Defendant.

68.     Susana's pre-recorded message stated on this occasion stated that she was calling to follow up on the first message, and provided a call-back number.  It was clear to Plaintiff Vu that a computer scheduled this follow up pre-recorded reminded.

69.     Less than an hour later, Plaintiff Vu received a third call from UNKNOWN.

70.     Plaintiff Vu was able to answer this call.

71.     Plaintiff was ultimately routed to a live representative who began a sales pitch for mortgage loans.

72.     Plaintiff Vu asked the caller what company the caller was with but she refused to tell Plaintiff Vu.

73.     Plaintiff Vu then disconnected the call.

74.     At the time of the calls, Plaintiff Vu did not have a business relationship with Defendant.

75.     Plaintiff Vu was annoyed by the calls and wanted Defendant to stop calling.

76.     Plaintiff Vu called (281) 407-6114 to tell Defendant to remove her number from its call list.  When Defendant answered a pre-recorded message identified itself as Loandepot.

77.     It was obvious to Plaintiff Vu that Defendant was engaged in a marketing campaign wherein Defendant contacts a large number of consumers using an autodialer.

78.     Based on the circumstances of the calls – including but not limited to the multiple calls in a short period of time, and Plaintiff Vu received calls from Defendant containing pre-recorded voice messages– Plaintiff Vu believed Defendant called her cellular telephone using an ATDS that automatically selected her number from a computer database.

79.     On information and belief, Defendant's ATDS called Plaintiff Vu on every occasion.

80.     On information and belief, and based on the circumstances of the all the calls, Defendant called Plaintiff Vu using an ATDS.

81.     Plaintiff Vu understood the purpose of Defendant's calls was to solicit business from Plaintiff Vu.

82.     The telephone number Defendant called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

83.     Plaintiff Vu is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 6312.

84.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

85.     Plaintiff Vu did not provide Defendant with prior express written consent to receive calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

86.     All calls Defendant made to Plaintiff Vu violate 47 U.S.C. § 227(b)(1).

87.     Plaintiff Vu has reason to believe Defendant has called, and continue to call, thousands of wireless telephone customers to market their products and services.

88.     Plaintiff Vu's overriding interest is ensuring Defendant ceases all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

89.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff Vu, on behalf of himself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

90.     On behalf of the Plaintiff Class, Plaintiff Vu seeks an injunction requiring Defendant to cease all wireless telemarketing and spam activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

# CLASS ACTION ALLEGATIONS

## A. CLASS ALLEGATIONS

91.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2),

and (b)(3) on behalf of themselves and the following classes defined as follows (the "Class"):

> **"Robocall Class":** All individuals in the United States who received a call made by or on behalf of Defendant to the individual's cellular telephone through the use of an automatic telephone dialing system, or pre-recorded voice, or any other device having the capacity to dial numbers without human intervention, from October 16, 2013 to the date the Class is certified, where Defendant's records fail to indicate prior express written consent from the recipient to make such call.

> **"DNC[2] Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days; and (3) for whom Defendant has no record of consent to place such calls.

92.     The following individuals are excluded from the Class: (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries,

parents, successors, predecessors, and any entity in which Defendant or its parents have a

controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs'

counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for

exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

and/or released.

93.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery

of economic injury on behalf of the Class, and it expressly is not intended to request any recovery

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

for personal injury and claims related thereto.

94.     Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

95.     Plaintiffs and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiffs and the Class members *via* their cellular telephones by using an ATDS, thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of Plaintiffs and the Class members.

**B.     NUMEROSITY**

96.     The exact size of the Class is unknown and not available to Plaintiffs at this time, but it is clear individual joinder is impracticable.

97.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class.  Members of the Class can be easily identified through Defendant's records.

**C.     COMMONALITY AND PREDOMINANCE**

98.     There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class.

99.     Common questions for the Class include, but are not necessarily limited to the following:

     a.     Whether Defendant's conduct violated the TCPA;

     b.     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendants and/or their agents with prior express

written consent to receive such phone calls after October 16, 2013;

c.     Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

d.     Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

e.     Whether Defendant systematically made telephone calls to consumers after October 16, 2013 (other than calls made for emergency purposes or made with the prior express written consent of the called party) using any automatic dialing system or pre-recorded voice to any telephone number assigned to a cellular phone service; and

f.     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

## D.   TYPICALITY

100.    Plaintiffs' claims are typical of the claims of the other members of the Class.

101.    Plaintiffs and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Class.

## E.   ADEQUATE REPRESENTATION

102.    Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

103.    Plaintiffs have no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

## F.   POLICIES GENERALLY APPLICABLE TO THE CLASS

104.    This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

105.    Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

**G.    SUPERIORITY**

106.    This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

107.    The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

108.    Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

109.    Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

110.    By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TCPA, 47 U.S.C. § 227**
**("Robocall Claim" On behalf of Plaintiffs and the Class)**

111.    Plaintiffs re-allege and incorporate by reference each preceding paragraph as though set forth at length herein.

112.    Defendant made unsolicited and unauthorized calls using an ATDS or pre-recorded voice to Plaintiffs' and the Class Members' cellular telephones for the purpose of marketing products and/or services to Plaintiffs and the Plaintiffs Class Members.

113.    Defendant made the calls without prior express written consent of the Plaintiffs and Plaintiff Class Members.

114.    The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

115.    As a result of Defendant's violations of 47 U.S.C. § 227, *et. seq.*, Plaintiff and the Plaintiff Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

116.    Because Defendant had knowledge that Plaintiff and the Plaintiff Class Members did not consent to the receipt of the aforementioned telephone solicitations, the Court should, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by the Plaintiffs and Plaintiff Class Members.

117.    Plaintiffs and the Plaintiff Class Members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227
### ("DNC Claim" On behalf of Plaintiff Vu and the Class)

118.    Plaintiffs re-alleges and incorporates by reference each preceding paragraph as though set forth at length herein.

119.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the

regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

120.    The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

121.    47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

122.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

123.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiffs and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

124.     Defendant made more than one unsolicited telephone call to Plaintiff Vu and members of the Class within a 12-month period without their prior express consent to place such calls. Plaintiff Vu and members of the Class never provided any form of consent to receive telephone calls from Defendant does not have a record of consent to place telemarketing calls to them.

125.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff Vu and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

126.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Vu and the Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

127.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

128.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

129.     Plaintiffs are entitled to recover reasonable attorney fees and requests the attorneys' fees be awarded.

21

## JURY DEMAND

130.    Plaintiffs, individually and on behalf of the Class, demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

a.      An order certifying the Class as defined above, appointing Plaintiffs as the representative of the Class, and appointing her counsel HUGHES ELLZEY, LLP as lead Class Counsel;

b.      An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

c.      An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

d.      An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

e.      Pre-judgment and post-judgment interest on monetary relief;

f.      An award of reasonable attorneys' fees and court costs; and

g.      All other and further relief as the Court deems necessary, just, and proper.

Dated:  May 13, 2015.


Respectfully Submitted,


_____ */s/ Benjamin H. Crumley* _____
Benjamin H. Crumley, Esq.
Florida Bar No. 18284
CRUMLEY & WOLFE, PA
2254 Riverside Avenue
Jacksonville, Florida 32204
Telephone (904) 374-0111
Facsimile (904) 374-0113


W. Craft Hughes—craft@hughesellzey.com
Texas Bar No. 24046123
Jarrett L. Ellzey—jarrett@hughesellzey.com
Texas Bar No. 24040864
HUGHES ELLZEY, LLP
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
*(Admitted Pro Hac Vice)*

**ATTORNEYS FOR PLAINTIFFS
AND THE PROPOSED CLASS**